Losing-, J.,
delivered the opinion of the court:
The petitioner claims $11,902 97, on an award made by the Attorney General of the United States, between him as surviving partner as aforesaid and the United States.
And the court finds the facts to be—
That, in 1857, several American vessels were captured and plundered by the Chinese, then at war with England. To redress these wrongs, a convention was concluded between our government and that of China, under which China paid in the manner provided, (12 U. S. Stat., 1081,) 500,000 taels in full liquidation of all claims of American citizens. The amount specified was paid in February, 1859, in debentures equivalent to coin, and from the use of which from time to time till 1864, the United States realized in coin $735,238 97.
By the act of March 3, 1859, (12 U. S. L., 408,) Congress authorized the President to appoint two commissioners to examine and adjust the claims presented under the convention. The commissioners were appointed and acted in China, and the claims allowed by them were paid, and the balance, amounting to $267,159 56, was remitted in sterling exchange equivalent to coin to the United States, and by them invested in their bonds known as the ten-forties.
Among the claims presented to the commissioners in China was that of William Nott & Co. for the loss of $16,197 60 in Mexican dollars, belonging to that firm and taken by the Chinese from the ship Neva. The claim was disallowed by the commissioners.
Under the act of Congress of 22d February, 1869, c. 44, entitled u An act for the relief of Nott & Co., ” the petitioner presented the claim of Nott & Co. to the Attorney General, who made the award thereon.
*518 On the 8th day of March, 1869, the said Bichard B. Tyers, as surviving partner as aforesaid, constituted George M. Miller, his attorney.
On the 13th day of March, 1869, Mr. Miller, as attorney of the petitioner, called at the State Department, and claimed the payment of the award according to its tenor, and sought to see the Secretary of State,, and did not succeed in doing so. He was informed by Mr. Baker, the disbursing agent of the Department, at his office therein, that it was decided that the award should be paid in legal tenders, and not in coin, and Mr. Baker tendered to Mr. Miller the sum of $38,242 53 in legal tenders, and receipt therefor to be signed by Mr. Miller, as attorney for the claimant, which was as follows:
‘ ‘ Deceived of George E. Baker, agent for Department of State, $38,242 53 ‘legal tender,’ in payment of claim of Nott & Go., under the act of Congress (passed February 22, 1869) referred to in award of the Attorney General, of which the foregoing is a copy.
“ Washington, March 13,1869.
“$38,242 53.
“ GEOBGE M’OULLOCH MILLED,
“For NOTT & CO.”
Mi'. Miller objected to such payment, and informed Mr. Baker that he'(Mr. Miller) was not authorized to receive the legal tenders offered him in satisfaction of the award ,• to which Mr. Baker replied that although Mr. Miller took the amount in currency, he (Mr. Baker) supposed an appeal to the new Secretary on the decision, and for payment of the balance, would be open to the petitioner. Mr. Miller then signed the receipt, at the same time telling Mr. Baker he did so reserving the right of the claimant to appeal from the decision of the Secretary; then Mr. Miller gave the receipt to Mr. Baker, and from him received $38,242 53 in legal tenders.
The counsel for the defendants objected to the statements and conversation of Mr. Miller and Mr. Baker.
The petitioner at all times, and his former partners during their lives, bore true allegiance to the United States, and neither he nor they at any timein any way voluntarily aided, abetted, or gave encouragement to rebellion against said Government.
And we find as conclusions of law—
1. That said award was valid and bound the United States to *519 pay the sum awarded thereby in gold or silver coin of the currency of the United States.
2. That the United States paid said sum of $38,242 50 in currency after due notice that the same would be received only at its market value, and on account of and not in full satisfaction of said award.
3. That said award was'not satisfied by the payment of said $38,242 50 in currency.
4. That the claim of the petitioner is not barred by his receiving the $38,242 50 in currency, as above stated, nor by the receipt given therefor.
The first question is on the validity of the award, i. e., whether its requirement that the amount awarded should be paid in gold was of legal obligation on the United States.
The money was received in coin, or its equivalent, from the Chinese government by the United States, to be paid by'them to Nott & Co., in or before February, 1859. It was then money had and received to the use of Nott & Co., and as such it was then a legal debt solvable in coin, for then no debts were solvable otherwise; and it would have been recoverable here on a claim for money, had and received, had no other tribunal been appointed first. It was then a debt due before the passage of the legal-tender acts, and by the decision of the Supreme Court in Hepburn v. Griswold it is not affected by those acts, and it could not be by any disposition or investment the United States might make of the coin they received during the pendency of the claim.
It was therefore a debt legally payable in coin, and the Attorney General had no right or power to order it to be paid in anything else, and the utmost that can be alleged is that his right and power were to order the amount to be paid in gold or silver coin, and he confined his award to gold. But we think this is not enough to vitiate the award; either gold or silver coin were lawful money, and his discretioh reached to any lawful money. Besides, the word “ gold” in the award is meant to distinguish between coin and currency, and in the contract means coin; it was so understood, and has been so treated in argument; and we so construe it, and think the award, as rendered, was solvable by the United States in gold or silver coin of the currency of the United States.
The next question is, whether the award has been performed.
*520 Undoubtedly, where a creditor takes currency in payment of a debt, without objection, that is a payment of so many dollars; but if the creditor declares he will receive the currency only at its value, or on account, and retain his claim for the difference, and the debtor, without objection, lets the creditor have the money, that impliedly is the debtor’s assent to the creditor’s proposal.
And here the fact is found that it was distinctly notified and understood between Mr. Miller and Mr. Baker that the former received the money only at its market value, or on account, and would hold his claim on the United States for the balance, or the difference between the currency and coin.
It may be said that Mr. Baker, the disbursing agent of the Secretary’s office, was not the agent of the United St tes to receive such notice, and had no right to pay anything but currency. We think neither proposition is true. Mr. Baker was the secretary, in his absence, for the ordinary routine of the office, such matters as paying money and taking receipts, and the circumstances and occurrences connected with them; for they are details in official business ,that otherwise could not be done at all. And these matters, done at the Secretary’s office, and under his authority, are to be taken as transacted with the Secretary.
And the Secretary had a right to pay this award in coin, and he had no right to pay it in anything else. But he could, if he pleased, proffer payment in currency, and this he elected to do. And now the United States seek the advantage of this, and adopt such unauthorized act of the Secretary as their own, and thus make him their agent in doing it. But they thus make him their agent for the whole transaction between him and the petitioner. For they cannot make him their agent only for such part as they please, and disclaim his agency as to the rest of it. And if he was their agent in proffering the currency, he was their agent for receiving the reply it induced and the notice as to how the currency was taken; for the proffer and reply to it were parts of the same transaction. And the result is this, that the United States proffered the currency; that the claimant agreed to accept it at its real value, and retain his claim for the balance; and the United States, with notice of this, and without objecting to it, gave him the currency, and this was their assent to the claimant’s proposal. In this way the parties *521 abided by their legal rights, as they should be judicially decided. This was the propriety of the circumstances, and what their respective agents intended.
The United States had no right, and the Secretary had from them no authority, to pay the award in currency; for the law, and the terms of the award, made it payable in coin only; and the acceptance of currency was optional with the petitioner. And when the United States seek to avail themselves of that acceptance, they can use it only with the conditions and on the terms which accompanied and qualified it.
The United States certainly had a right to say that the currency should be taken in full payment, or not at all; but they did not say this, and it cannot be inferred from the action of their agent which they now adopt.
The argument of the Attorney General referred to the form in which judgment should be rendered. This is directed by the decision of the Supreme Court in the case of Butler v. Horwitz, (7 Wallace, 258.) In that case the action was for rent, payable in English guineas, or other gold and silver. On appeal the Supreme Court said:
“The judgment was rendered on the result of two legal propositions : 1st, that the covenant in the lease required the delivery of a certain amount of gold and silver in payment of rent; 2d, that damages for non-performance must be assessed in the legal-tender currency. The first of these propositions is, in our judgment, correct; the second is, we think, erroneous.”
And in conclusion the Supreme Court say: “When, therefore, it appears to be the clear intent of a contract that payment or satisfaction shall be made in gold and silver, damages should be assessed and judgment rendered accordingly. It follows that in the case before us the judgment was erroneously entered. The damages should have been assessed at the sum agreed to be due, with interest in gold and silver coin, and judgment should have been entered in coin for that amount.”
In this case before us to-day, we hold that the original obligation of the United States and the award were payable in coin and solvable in nothing else; and, therefore, our judgment is for the amount due in gold and silver coin of the currency of the United States.
On the facts stated we find that the claimant is entitled to receive from the United States, in gold or silver coin of the *522 currency of tbe United States, the difference between $38,242 53 in currency and iu gold on the 13th of March, 1869, amounting-to the sum of $11,902 97. And judgment is rendered and is to be entered for the claimant accordingly.